UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DENNIS ROBINSON,

                    Petitioner,

v.                                    Case No. 3:10-cv-791-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.

_____

## ORDER

## I. Status

Petitioner Robinson, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on August 15, 2010, pursuant to the mailbox rule. Robinson challenges a 2007 state court (Columbia County, Florida) judgment of conviction for sale of cocaine within 1,000 feet of a school (two counts), possession of cocaine with intent to sell within 1,000 feet of a school (two counts), sale of cocaine, possession of cocaine with intent to sell, and possession of drug paraphernalia. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause (Response) (Doc. #20) with exhibits (Resp. Ex.). On November 16, 2010, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #13), admonishing Robinson regarding his obligations and giving Robinson a time frame in which to submit a reply. On May 13, 2013,

Robinson notified the Court that he does not intend to file a Reply.  <u>See</u> Petitioner's Response to Order to Show Cause (Doc. #25).  This case is ripe for review.

## II. Procedural History

On October 18, 2005, the State of Florida charged Robinson with sale of cocaine within 1,000 feet of a school (counts one and three), possession of cocaine with intent to sell within 1,000 feet of a school (counts two and four), sale of cocaine (count five), possession of cocaine with intent to sell (count six), and possession of drug paraphernalia (count seven).  Resp. Ex. A at 1-3, Information.  On February 22, 2007, Robinson entered a substantial assistance agreement, in which he agreed to enter a guilty plea to the charges in exchange for a more favorable sentencing recommendation if he abided by the terms and conditions of the agreement.  <u>Id</u>. at 93-96, Offer of Plea; Resp. Ex. B, Transcript of the Plea Proceeding (Plea Tr.); Resp. Ex. F at 138-43, Substantial Assistance Agreement.

At the September 7, 2007 sentencing, Sergeant Keith Heston[1] testified that Robinson did not provide any assistance under the terms of the substantial assistance agreement.  <u>See</u> Sentencing Tr. at 3-6.  That same day, the trial court adjudicated Robinson guilty on each count and sentenced him to: a term of thirteen years of

_____

[1] Sergeant Heston was employed with the Lake City Police Department and assigned to the drug task force.  <u>See</u> Resp. Ex. C, Transcript of the Sentencing Hearing (Sentencing Tr.) at 3.

imprisonment with a three-year mandatory minimum sentence, followed by two years of drug offender probation (count one); fifteen years of drug offender probation (count two), to run consecutively to the term imposed for count one; a term of thirteen years of imprisonment with a three-year mandatory minimum sentence, followed by two years of drug offender probation (count three), to run concurrently with the term imposed for count one; fifteen years of drug offender probation for each count (counts three, four, five, and six), to run concurrently to each other and count two, but consecutively to the term imposed for count one.  Id. at 21-22; Resp. Ex. A at 106-12, Judgment.

On appeal, Robinson, through counsel, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).  Resp. Ex. D, Initial Brief of Appellant.  On June 5, 2008, the appellate court affirmed Robinson's conviction and sentence per curiam without issuing a written opinion, see Robinson v. State, 983 So.2d 584 (Fla. 1st DCA 2008); Resp. Ex. E, and the mandate was issued on July 1, 2008, Resp. Ex. E.[2]  Robinson did not seek review in the United States Supreme Court.

On July 8, 2008, Robinson filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion).  Resp. Ex. F at 1-11.  In his request

---

[2] Online docket, Denis Robinson v. State of Florida, Case No. 1D07-5013, website for the First District Court of Appeal (http://www.1dca.org).

for post conviction relief, Robinson asserted that counsel (Jeffrey Alan Siegmeister) was ineffective because he failed to: communicate the State's five-year plea offer (ground one), and establish the terms of the plea agreement (ground two).  The State responded.[3] Id. at 15-29.  The trial court denied the Rule 3.850 motion on January 19, 2010.  Id. at 70-143.  Robinson filed a brief on appeal, see Resp. Ex. G, and the State filed a notice that it would not file an answer brief.[4]  On May 12, 2010, the appellate court affirmed the trial court's decision per curiam, see Robinson v. State, 36 So.3d 661 (Fla. 1st DCA 2010); Resp. Ex. H, and the mandate issued on June 8, 2010, see Resp. Ex. H.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 7-8.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).

---

[3] Resp. Ex. F at 22-26, Response to Motion for Post Conviction Relief, Exhibit A, Affidavit of Jeffery Siegmeister (Siegmeister's Affidavit), dated December 22, 2009.

[4] Online docket, Dennis Robinson v. State of Florida, Case No. 1D10-636, website for the First District Court of Appeal (http://www.1dca.org).

"It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Robinson's claim under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).
>
> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:
>
>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An

5

application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[5] 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's

---

[5] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

rationale for such a ruling.  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).   Thus, to the extent that Robinson's claim was adjudicated on the merits in the state courts, it must be evaluated under § 2254(d).

### VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.   That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id</u>., at 687, 104 S.Ct. 2052.

7

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[6] A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

Harrington v. Richter, 131 S.Ct. 770, 787-88 (2011).

Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citation omitted). "Surmounting Strickland's high bar is never an easy task." Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,

---

[6] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show  there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

review is 'doubly' so, Knowles[7], 556 U.S., at ----, 129 S.Ct. at

1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal
> court believes the state court's
> determination" under the Strickland standard
> "was incorrect but whether that determination
> was unreasonable - a substantially higher
> threshold." Schriro, supra, at 473, 127 S.Ct.
> 1933.  And, because the Strickland standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a
> defendant has not satisfied that standard.
> See Yarborough v. Alvarado, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also

Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In

addition to the deference to counsel's performance mandated by

Strickland, the AEDPA adds another layer of deference--this one to

a state court's decision--when we are considering whether to grant

federal habeas relief from a state court's decision.").

### VII. Findings of Fact and Conclusions of Law

Robinson asserts that counsel was ineffective because he

failed to establish a definite time period for the completion of

the substantial assistance agreement.  Robinson raised this

ineffectiveness claim in his Rule 3.850 motion, and the trial court

denied the motion with respect to this claim, stating:

---

[7] Knowles v. Mirzayance, 556 U.S. 111 (2009).

The Defendant also claims that Trial Counsel was ineffective because the agreement did not include the exact date upon which the Defendant's performance of the substantial assistance was due.   After a th[o]rough examination of Florida caselaw, this Court is unaware of any case which holds that substantial agreements must contain a specific timeline for performance.   Furthermore, the Court is also unaware of any case which holds that an attorney is ineffective because a timeline is not included in a substantial assistance agreement.  However, after a review of both the agreement and the record of the plea hearing, the Court is satisfied that the Defendant was sufficiently apprised of the terms of the agreement and the expectations that accompanied it.   See Substantial Assistance Agreement.[8]

Resp. Ex. F at 72.   On appeal, the appellate court affirmed the denial per curiam.

To the extent that the appellate court may have affirmed the denial of Robinson's motion for post conviction relief on the merits, Robinson would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.   After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.   Nor were the state courts' adjudications based on an unreasonable determination of the facts in light of the evidence

---

8 See Resp. Ex. F at 138-43, Substantial Assistance Agreement.

presented in the state court proceedings.  Thus, Robinson is not
entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the
denial of the Rule 3.850 motion on the merits or that the state
courts' adjudications of this claim are not entitled to deference
under AEDPA, Robinson's claim is still without merit because the
trial court's conclusion is fully supported by the record.   In
evaluating the performance prong of the <u>Strickland</u> ineffectiveness
inquiry, there is a strong presumption in favor of competence.  The
presumption that counsel's performance was reasonable is even
stronger when, as in this case, counsel is an experienced criminal
defense attorney.[9] The inquiry is "whether, in light of all the
circumstances, the identified acts or omissions were outside the
wide range of professionally competent assistance." <u>Strickland</u>,
466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to
'counsel's perspective at the time' . . . and by giving a 'heavy
measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>,
545 U.S. 374, 381 (2005) (citations omitted).  Thus, Robinson must

---

[9] "When courts are examining the performance of an experienced
trial counsel, the presumption that his conduct was reasonable is
even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316
(11th Cir. 2000) (en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001); <u>see</u>
<u>Williams v. Head</u>, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that
"[i]t matters to our analysis" whether the attorney is an
experienced criminal defense attorney), <u>cert</u>. <u>denied</u>, 530 U.S. 1246
(2000).  Having been admitted to the Florida Bar in 1994, <u>see</u>
http://www.floridabar.org, Jeffrey Alan Siegmeister had been
practicing criminal defense law for approximately thirteen years at
the time of Robinson's plea in 2007.  <u>See</u> Siegmeister's Affidavit.

establish that no competent attorney would have taken the action that counsel, here, chose.

Indeed, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted), <u>cert</u>. <u>denied</u>, 516 U.S. 856 (1995). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward v. Hall</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dept. of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), <u>cert</u>. <u>denied</u>, 552 U.S. 990 (2007). Robinson failed to carry this burden.

Given the record, in this case, counsel's performance was well within the wide range of professionally competent assistance. The terms of the substantial assistance agreement were set forth in the agreement, and at the February 22, 2007 plea hearing. At the plea hearing, defense counsel stated:

> There is an offer of plea and an original
> substantial assistance agreement. Mr. Robinson
> has executed both of those documents here
> today. I've gone over those with him. He is

12

> entering a plea of guilty as charged with the
> substantial assistance agreement to control
> the ultimate sentence to be imposed at a later
> date.

Plea Tr. at 2. Robinson affirmed that he reviewed his case and the

substantial assistance agreement with his attorney and acknowledged

that he understood the substantial assistance agreement. Id. at 4.

When the trial judge inquired as to Robinson's understanding of the

substantial assistance agreement, the following colloquy ensued.

> THE COURT: I don't want to know who, just
> tell me basically what you have to do.  We
> don't need names.
>
> THE DEFENDANT: Just work with Mr. Heston,
> work with Mr. Heston.
>
> THE COURT: Doing what, trimming the grass
> or what?
>
> THE DEFENDANT: Well, not trimming the
> grass.
>
> THE COURT: Right.
>
> THE DEFENDANT: I just need to, you know,
> bring forth some people.
>
> THE COURT: That are doing what.
>
> THE DEFENDANT: Drugs and things.
>
> THE COURT: Right, you're going to be out
> either making buys or setting up people for
> making buys and that kind of thing.  Do you
> understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: That's part of this deal.  And
> once I accept your plea, if you don't do those
> things, they're going to come in and tell me
> that at your sentencing hearing.

THE DEFENDANT: Yes, sir.

THE COURT: If you do well, they're going to come tell me that, but your sentence, you don't know what your sentence is going to be right now because I don't know what it will be.  It is somewhat determined by this offer of plea and the substantial assistance agreement.

THE DEFENDANT: Yes, sir.

THE COURT: So what you do or don't do could well have an effect on your ultimate sentence.  Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And most pleas aren't taken that way.  I take the plea and I immediately sentence, but this one, there's going to be a time lag between when you actually plead today and when you'll be sentenced, which will be at a later date.

THE DEFENDANT: Yes, sir.

Id. at 4-6.  Before accepting Robinson's plea, the trial judge

explained the problems other defendants encountered with their

substantial assistance agreements.

One is I see people sometimes on a substantial assistance agreement do one of two things that gets them in a lot of trouble. There's [sic] a lot of things that can get you in trouble.  Here's one or two that often get people in trouble.   They don't stay in touch with who they're supposed to stay in touch with.

Mr. Heston or somebody will tell you who to stay in touch with, and if it's not him, he'll tell you who the next person is to stay in touch with.  And if you can't figure it out, call your attorney and let him call

14

somebody and find out, but stay in touch.
That's the first thing.

The second thing is, it seems like we've
had several people that enter into an
agreement like this that can really benefit
you and then they go tell people about it.
They go tell their wife or their friend or
their best buddy who they think won't say
anything and then they say things and then
everybody on the street says, he [is] working
for the cops.  And all of a sudden you say I
can't make -- I can't help you.  I can't seem
to get anywhere anymore, but what you did put
you in that position.

Well, that wouldn't be much of an excuse
for this judge if you let the word out, and
then because of that, you couldn't perform
what you were supposed to perform, I would be
saying, well, you put yourself there.  You
know, they didn't put you there.

          . . . .

So I'm trying to let you know -- there's
a lot of other ways, too, but like using.  If
you go use drugs again, they test you and
you've got it in your system, you're obviously
not doing what they said.  They will never
tell you to use illegal drugs.  Never.  I
don't care what the situation is, they will
not tell you to do that.  Possess them, yes,
because you might be making buys or things of
that nature, but use them, they will never
tell you to use them.

          . . . .

That's the third one I was talking about.
Doing something on your own, thinking, well,
they wanted me to make this buy last Thursday
and I didn't, but I can make one Sunday
afternoon they don't even know about and I'll
get one more person.  Never, never, never,
never.  You do not do it unless it's at their
direction under their control. . . .

_Id_. at 11-12, 13.  Robinson affirmed that he understood.  _Id_. at

12, 13.  Additionally, Sergeant Heston advised Robinson as to other

terms of the substantial assistance agreement.

> One is you will possibly have to testify in
> these cases.  Okay?
>
> Two is we can request a polygraph on you
> at any time during this just to make sure
> you're being on the level with us.
>
> And, three, we have people that go out
> here all the time and give me information and
> then they get out and they don't want to deal
> with those people.  They try to do other
> targets.  I'm not accusing you of that, but
> we've had it happen.  We've got to do what we
> talked about and you know what that is.  Okay?

_Id_. at 13.  Defense counsel then stated:

> And for the record, Your Honor, I go over
> extensively with all my clients who are even
> thinking about substantial assistance
> agreements and what is expected of them as
> well as what will get them in trouble from my
> past experiences with the task force, what
> will end up getting them basically before the
> Court with a bad sentencing recommendation.

_Id_. at 14.  Robinson affirmed that he had discussed those issues

with defense counsel.  _Id_.

Next, the trial judge accepted Robinson's plea, stating:

> I'm going to find it's given freely,
> voluntarily, knowingly and intelligently, that
> we've taken extra time to go over the
> substantial assistance agreement and he
> clearly understands that and what his duties
> and obligations will be and what the
> consequences of his actions or lack of actions
> could be.

Id.  The  United  States  Supreme  Court  has  determined  that  "the representations  of  the  defendant  .  .  .  [at  a  plea  proceeding]  as well  as  any  findings  made  by  the  judge  accepting  the  plea, constitute  a  formidable  barrier  in  any  subsequent  collateral proceedings.  Solemn  declarations  in  open  court  carry  a  strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Robinson's case is not one where he was attempting to perform under  the  agreement  and  then  ran  out  of  time  to  successfully provide  assistance  to  the  drug  task  force.   At  the  September  7, 2007 sentencing hearing, Sergeant Heston described his contact with Robinson as well as Robinson's lack of assistance.

> Mr. Robinson had good potential we felt. When we interviewed him initially, he gave us a list of targets and we asked him several times, are you sure you can do this?  We don't want you to name people that you cannot do. He said he'd get at it and he could take care of it.
>
> When he first got -- the initial plea was entered,[10]  we  were  keeping  good  phone contact, he was calling me regularly.  He said he had some people he could buy from.
>
> Finally after he had mingled with them a while, in June, I think it was June the 9th, we actually scheduled a date, this wasn't the first date, but it was the first date we were actually going to get together that day, he called me and he offered me an alternate target  to  what  we  had  talked  about.    The

---

[10] See Resp. Ex. A at 93-96, Offer of Plea, dated February 22, 2007.

> alternate target from our investigation was a
> street level person which was well below what
> he had initially named.
>
> He had another -- he had to be with his
> wife or something that day, so he was in a
> rush to start with, but we didn't get that
> done that day.  That was our choice.  I gave
> him instructions to call me.  Let's see, we
> met with him on the 15th and I told him, look,
> I need to know who you can do.  He again gave
> me a list of names.  I said you need to call
> me the first of the week, that was June the
> 15th.  I still haven't got [sic] the call
> since the first of the week, so nothing -- we
> basically accomplished nothing.

Sentencing Tr. at 4-5.  Robinson acknowledged that he never made a

controlled buy of narcotics for the task force.  <u>Id</u>. at 9.  He also

admitted that he did not contact the task force after June 15,

2007.  <u>Id</u>.

Undoubtedly, Robinson was aware that he was running out of

time to assist the drug task force.  At the sentencing hearing, he

stated:

> The last time I talked to Mr. Heston, he
> said that my court date was coming up, so I
> figured, you know, I was running out of time,
> I had run out of time, you know, so I just,
> you know -- I mean he didn't tell me what day
> it was or whatever, but I just figured I had
> run out of time because he said, you know, I'm
> running out of time, I need to do something,
> you know, and I couldn't make no contacts.

<u>Id</u>. at 10.  Thus, according to Sergeant Heston and Robinson, the

last time Robinson had any contact with the drug task force was

June 15, 2007.  <u>Id</u>. at 5, 10.

Moreover, the May 15, 2007 clerk's notes reflect that the original sentencing hearing was scheduled for ninety days later, and then, on August 16, 2007, it was continued again until September 7, 2007.  Resp. Ex. A at 98-99; see Siegmeister's Affidavit at 25, paragraph 17 (stating "the court file will show that the original sentencing was set out six months and then reset more than three weeks later, clearly the time frames were obvious to the Defendant").  Defense counsel described the time period after the February 22, 2007 plea, in which Robinson could have provided assistance to law enforcement.

> [S]entencing was set by the State, approximately six months later, August 16, 2007.  At that hearing, the Task Force representative advised both the State and myself (I am not sure if this was on the record) that the Defendant had "done nothing." I discussed this with Mr. Robinson and what the agreement exposed him to.  I requested that M[r]. Robinson be given additional time to provide substantial assistance.  This request was granted and Mr. Robinson was given additional time to provide substantial assistance to law enforcement.  Mr. Robinson knew and well knew what his obligation was and the time for him to provide the substantial assistance.

Id. at 24, paragraph 13.  Thus, even without having a specific completion date in the substantial assistance agreement, Robinson had ample notice that his time to provide assistance to the drug task force was coming to an end.  Nevertheless, while knowing that his time to assist law enforcement was drawing near, Robinson did not contact the drug task force after June 15, 2007.

19

Here, counsel was not ineffective for not attempting to have a completion date in the substantial assistance agreement. Even assuming arguendo deficient performance by defense counsel, Robinson has not shown prejudice. Given the record, including Robinson's failure to contact the drug task force after June 15, 2007, Robinson has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had attempted to include a completion date in the agreement. Indeed, while Robinson was fully aware that his time to assist law enforcement under the terms of the substantial assistance agreement would end without a specific date, he still did nothing. Thus, Robinson's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice.

## VIII. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Robinson seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Robinson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve

20

encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Robinson appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted,

the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

    4.   The Clerk of the Court shall close this case.

    **DONE AND ORDERED** at Jacksonville, Florida, this 31st day of May, 2013.



**MARCIA MORALES HOWARD**
United States District Judge


sc 5/22
c:
Denis Robinson
Ass't Attorney General (Pate)


22